SCHULZ, ADMINISTRATRIX, *v.* PENNSYLVANIA
RAILROAD CO.

No. 282.  Argued March 27–28, 1956.—Decided April 9, 1956.

*Nathan Baker* argued the cause and filed a brief for petitioner.

*Joseph P. Allen* argued the cause and filed a brief for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

The petitioner brought this suit for damages under the Jones Act,[1] alleging that her husband while employed by the respondent railroad as a tug fireman was drowned because of the negligent failure of respondent to provide him with a safe place to work.  The District Judge directed the jury to return a verdict for the defendant, stating, "There is some evidence of negligence, and there is an accidental death.  But there is not a shred of evidence connecting the two."  The Court of Appeals affirmed, saying that while the evidence was "perhaps at most only doubtfully sufficient to present a jury question as to

---

[1] 41 Stat. 1007, 46 U. S. C. § 688.

defendant's breach of duty" it failed to show "where the accident occurred" or "that it was proximately caused by any default on the part of the defendant." [2]

The jury trial "is part and parcel of the remedy afforded railroad workers under the Employers Liability Act," which the Jones Act makes applicable to those working as petitioner's husband was here.[3] The Seventh Amendment to the Constitution provides that "the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." [4] We granted certiorari to consider the failure of the District Court to let this case go to the jury. 350 U. S. 882.

While some facts were in dispute there was evidence from which a jury could have found: On Christmas Day 1949, at about 5:15 p. m., the deceased, Schulz, reported for work on his job at Pier H, Jersey City, New Jersey, and was assigned to work on four tugboats docked side by side there. He went immediately to check the boats without waiting to change from his street to his working clothes. Returning to the pier alongside the tugs about seven o'clock, Schulz reported that he had finished his checking and was now going back to the boats to change to his work clothes and proceed with his other duties there. He was last seen alive walking in the direction of the nearest tug. At 1:25 a. m., a supervisor found Schulz was not on the boats. His street clothes were hanging in the upper engine room where the tug attendants usually changed clothes. His lunch package was also there. Three of the tugs were at all times wholly unlighted and dark; one was partially illuminated by

---

[2] 222 F. 2d 540, 541.

[3] *Bailey* v. *Central Vermont R. Co.*, 319 U. S. 350, 354.

[4] For a discussion of the right to trial by jury under the Seventh Amendment see *Galloway* v. *United States,* 319 U. S. 372, and cases there cited.

spotlights from the pier. The night was cold—10 above zero—and there was some ice on the tugs. Because the company did not have enough workers that night properly to perform the duties that were required Schulz had to try to take care of all four tugs by himself. To do this he had to step from one boat to another in the dark except for such limited illumination as he could obtain from a flashlight. Several weeks after Schulz disappeared from the boats his body was found in the water near an adjacent pier. He was clothed in nothing but shorts and socks. A flashlight was in his hand. He had drowned. It is conceded that the deceased was not under the influence of alcohol when he came to the boat, that he did not commit suicide, that there was no foul play, and that he met his death by accident. The evidence showed that he was a capable and experienced workman who had been employed by the defendant for several years.

In considering the scope of the issues entrusted to juries in cases like this, it must be borne in mind that negligence cannot be established by direct, precise evidence such as can be used to show that a piece of ground is or is not an acre. Surveyors can measure an acre. But measuring negligence is different. The definitions of negligence are not definitions at all, strictly speaking. Usually one discussing the subject will say that negligence consists of doing that which a person of reasonable prudence would not have done, or of failing to do that which a person of reasonable prudence would have done under like circumstances. Issues of negligence, therefore, call for the exercise of common sense and sound judgment under the circumstances of particular cases. "[W]e think these are questions for the jury to determine. We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions

as these as well as others." *Jones* v. *East Tennessee, V. & G. R. Co.,* 128 U. S. 443, 445 (1888).

In this case petitioner is entitled to recover if her husband's death resulted "in whole or in part"[5] from defendant's negligence. Fair-minded men could certainly find from the foregoing facts that defendant was negligent in requiring Schulz to work on these dark, icy and undermanned boats. And reasonable men could also find from the discovery of Schulz's half-robed body with a flashlight gripped in his hand that he slipped from an unlighted tug as he groped about in the darkness attempting to perform his duties.[6] But the courts below took this case from the jury because of a possibility that Schulz might have fallen on a particular spot where there happened to be no ice, or that he might have fallen from the one boat that was partially illuminated by shore lights. Doubtless the jury could have so found (had the court allowed it to perform its function) but it would not have been compelled to draw such inferences.[7] For "The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable."[8] Fact finding does not require mathematical certainty.[9] Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn.

---

[5] 53 Stat. 1404, 45 U. S. C. § 51; 41 Stat. 1007, 46 U. S. C. § 688.

[6] Cf. *Sadler* v. *Pennsylvania R. Co.,* 159 F. 2d 784.

[7] *Johnson* v. *United States,* 333 U. S. 46.

[8] *Tennant* v. *Peoria & P. U. R. Co.,* 321 U. S. 29, 35. Conversely, "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences." *Ibid.*

[9] *Lavender* v. *Kurn,* 327 U. S. 645, 653.

We think the evidence was sufficient to require submission of the case to the jury, and that it was error not to do so.

*Reversed.*

MR. JUSTICE REED, MR. JUSTICE BURTON and MR. JUSTICE MINTON dissent.

MR. JUSTICE FRANKFURTER.

Considerations that I have heretofore spelled out govern me in the conviction that the writ in this case should be dismissed as improvidently granted. *McAllister* v. *United States,* 348 U. S. 19, 23; *Carter* v. *Atlanta & St. A. B. R. Co.,* 338 U. S. 430, 437; *Cahill* v. *New York, N. H. & H. R. Co.,* 350 U. S. 898; *Anderson* v. *Atlantic Coast Line R. Co.,* 350 U. S. 807; *Swafford* v. *Atlantic Coast Line R. Co.,* 350 U. S. 807; *Moore* v. *Chesapeake & O. R. Co.,* 340 U. S. 573, 578; *Affolder* v. *New York, C. & St. L. R. Co.,* 339 U. S. 96, 101; see Frankfurter and Landis, The Business of the Supreme Court, 206 *et seq.*