**Catherine ALISON, as Administratrix of the Estate of Julian B. Alison, Deceased, Libelant-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 118, Docket 24714.**

United States Court of Appeals Second Circuit.

Argued Dec. 6, 1957.

Decided Jan. 13, 1958.

Meyer Kraushaar, New York City (Benjamin B. Sterling, New York City, on the brief), for libelant-appellant.

Corydon B. Dunham, New York City (Paul W. Williams, U. S. Atty., S.D.N.Y., and Curley C. Hoffpauir, New York City, on the brief), for respondent-appellee.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and SMITH, District Judge.

CLARK, Chief Judge.

Libelant's intestate, Julian B. Alison, first assistant engineer on respondent's Liberty ship "John A. Quitman," disappeared after the ship docked at a pier in the Elbe River opposite Hamburg, Germany. His body was recovered from the harbor more than six weeks later. Respondent concedes that his death resulted from drowning. Libelant, his widow, brought this action as a Suit in Admiralty against the United States under 46 U.S.C. §§ 741 et seq., alleging that Alison fell to his death from the ship's unseaworthy gangplank. The district court dismissed her libel on the merits, concluding that she had failed to prove any causal relation between the death and the alleged unseaworthiness of the gangplank or the alleged negligence of the respondent. D.C.S.D.N.Y., 150 F.Supp. 308. She appeals from this determination and from the court's denial of her motion for a new trial.

The "John A. Quitman" docked at Hamburg in the late afternoon of February 15, 1952. The weather was cold and snow was falling. The ship's chief mate had a temporary gangplank constructed for access to the pier. The gangplank and the surrounding area were well lighted. There was a sharp conflict in testimony concerning the seaworthiness of the gangplank. Libelant's witnesses stated that it had no handrails and was slippery. Respondent's witnesses claim that it was adequate and had lines on either side for railings. The pier itself was a concrete wall. Behind the wall was an open yard area some 250 or 300 feet wide bounded by a fence and a road. A tavern called the "Du und Ich" was located across the road between 60 and 100 feet from a gate in the fence.

Alison's actions that evening are the subject of conflicting testimony. Sometime early in the evening Alison went ashore ostensibly to have a few drinks in the "Du und Ich" and then to return to the ship to stand watch. He was seen in the tavern by its owner sometime around 8:00 p. m. Two of libelant's witnesses stated that sometime between 9:00 and 9:30 p. m. they met Alison dressed in working clothes returning to the ship. Supposedly they spoke with him, and he informed them that he was returning to stand his watch. They also testified that he was sober at the time. One of these witnesses stated that he met Alison approximately 100 feet from the ship's gangplank. Respondent's witnesses testified that they saw Alison in the "Du und Ich" around 8:00 p. m. and again between 10:00 and 11:30 p. m., and that Alison was drinking. Another of respondent's witnesses, the German watchman located forward of the gangplank aboard the ship, testified that he never observed Alison return to the ship. The next time Alison was seen was when his body was recovered on April 9, 1952.

It is libelant's contention that Alison was returning to his duties aboard ship early in the evening and in a sober condition. This conclusion is based on testimony that he was seen in working clothes

only 100 feet from the ship and that he said he was returning to stand his watch. Libelant then points to the alleged unseaworthiness of the gangplank and concludes that the only reasonable explanation for her husband's drowning was that he fell from the defective gangplank while trying to board the ship. She cites Schulz v. Pennsylvania R. Co., 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668, as requiring this conclusion.

The district court rejected most of the testimony of libelant's witnesses. It found that Alison, under the influence of intoxicants, was in the "Du und Ich" tavern at 8:00 p. m. and again between 10:00 and 11:30 p. m. In its view libelant failed to prove that Alison returned to his ship on that night or at any other time, or boarded the ship's gangplank and slipped from it.

■■ On appeal Mrs. Alison would have us believe her witnesses, discount the testimony of respondent's witnesses, and entertain all possible presumptions in her favor. In other words she would have us try this case as a jury. But this is not our province. "In reviewing a judgment of a trial court, sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous. No greater scope of review is exercised by the appellate tribunals in admiralty cases than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure. [Citations omitted.] A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" McAllister v. United States, 348 U.S. 19, 20, 75 S. Ct. 6, 99 L.Ed. 20. Here we are left with no such "definite and firm conviction." The district court saw and heard many of the witnesses. Its findings, in large part, reflect its estimate of the credibility of the witnesses. Certainly there is substantial evidence supporting these findings. To overturn them we must discount testimony given at the trial and believe testimony rejected by the district

court. We are unwilling to substitute our judgment of credibility for that of the district court. Petterson Lighterage & Towing Corp. v. New York Cent. R. Co., 2 Cir., 126 F.2d 992. And unless libelant's witnesses are believed and respondent's disbelieved, there is no occasion to consider the applicability of the favorable presumptions of Schulz v. Pennsylvania R. Co., supra, 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668, or similar cases cited by libelant.

One week after final judgment and over four years after the filing of the libel, libelant moved for a new trial on the ground of newly discovered evidence. The substance of this new evidence is contained in an affidavit by Leslie G. Rathbun, Jr., offered in support of the motion. Rathbun was Master of the "John A. Quitman" at the time Alison drowned. He was not a witness at trial, but stated in his affidavit that he investigated Alison's disappearance. His statements tend to support libelant's story that Alison, in a sober condition, left the "Du und Ich" tavern early in the evening to return to the ship. Rathbun's conclusions are based on statements ostensibly made to him by a "woman in the bar," various crew members, and a watchman located at the gate to the pier area. Rathbun's testimony also supported libelant's contentions concerning the unseaworthiness of the gangplank. And in an additional letter to Mrs. Alison's attorney, Rathbun indicated his willingness to testify to other facts which could be evidence of respondent's negligence.

■■ The district court denied the motion on the ground that libelant had failed to show "that the claimed newly discovered evidence was not discoverable in time for trial by diligent effort." This of course is a necessary requirement, Colonial Book Co. v. Amsco School Publications, D.C.S.D.N.Y., 48 F.Supp. 794, affirmed 2 Cir., 142 F.2d 362. Here Mrs. Alison could have obtained Captain Rathbun's statement sooner during the four years which elapsed between pleadings and trial had she exercised reasonable efforts to locate him. She failed to

do this, and the district court's decision was well within its discretion. 6 Moore's Federal Practice 3784 (2d Ed.1953).

Moreover, it does not appear that Rathbun's testimony would prove the causal connection between Alison's death and the alleged unseaworthiness of the ship. His testimony was based on hearsay and surmise, and even if admissible, see Pekelis v. Transcontinental & Western Air, Inc., 2 Cir., 187 F.2d 122, 23 A.L.R. 2d 1349, certiorari denied Transcontinental & Western Air, Inc., v. Pekelis, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374, would be entitled to little weight.

Judgment affirmed.