**Ida M. FINE, Plaintiff,**

v.

**GIANT FOOD STORES, INC., et al.,**
**Defendants.**

**No. CA 886—55.**

United States District Court
District of Columbia,
Civil Division.

June 11, 1958.

■■■■■■■■■■■■■■■

———◆———

Ralph F. Berlow, Washington, D. C., for plaintiff.

Paul R. Connolly, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

Originally, plaintiff sued three defendants (Giant Food Stores, Inc., American Mosaic Company, Inc., and Kass-Berger, Inc.) alleging negligence in the construction of a terrazzo floor in a Giant Food Store against all three defendants and alleging an additional ground of negligence against defendant Giant Food Stores, asserting that it failed to exercise ordinary care in the maintenance of the floor.[1]

After the opening statement of plaintiff's attorney, the Court granted the motion of defendant Kass-Berger, Inc., for a dismissal against it, and at the end of plaintiff's case, the Court granted the motion of defendant American Mosaic Company, Inc., for a directed verdict and denied the motion of defendant Giant Food Stores, Inc., for a directed verdict.

The case was submitted to the jury against the remaining defendant, Giant Food Stores, Inc., on two issues of negligence in the maintenance of the floor.

First: That defendant Giant cleaned the terrazzo floor with soap, when it knew, or should have known, that it was improper to use soap and that it created a slippery and dangerous condition of the floor:

Second: That defendant Giant was negligent in mopping the floor and in not properly drying it, thus creating a damp and dangerous condition causing plaintiff to fall.

After a jury verdict of $15,000 for plaintiff, defendant has moved for judgment notwithstanding the verdict, or a new trial.

Although several other points are urged in defendant's memorandum submitted to the Court,[2] only three were urged upon the Court at the oral argument on the motion, viz.:

I. That there was insufficient evidence to go to the jury on the issue of defendant's negligence in using soap to clean the terrazzo floor.

II. That there was insufficient evidence to go to the jury on the issue of defendant's negligence in not properly drying the floor after mopping the same.

III. That the Court erred in receiving evidence that after plaintiff's fall, defendant no longer used soap in cleaning the floor.

I.

That there was insufficient evidence to go to the jury on the issue of defendant's negligence in using soap to clean the terrazzo floor.

Plaintiff called John Smiley, manager of the Giant Food Store in which plaintiff fell, who testified that it was the custom of the store to wash its floor every morning shortly before it opened for business at nine o'clock. The floor was cleaned with whatever cleansers happened to have been damaged en route. Rather than return or discard the broken merchandise, the store used it for cleaning the floor. As a result, there is no accurate record of what cleansers were used—sometimes soaps, sometimes detergents, sometimes Clorox was added to the mixture. The store was opened on November 1, 1954, and the floor was washed every morning thereafter, except Sun-

1. The plaintiff, 72 years of age at the time of her accident, fell in the Giant Food Store located at Newark Street and Wisconsin Avenue. She had entered the store, completed her purchases, and gone through the check-out counter. A short distance from the check-out counter, as she proceeded toward the exit, she fell.

2. The Court has carefully considered the other arguments raised by the defendant in his motion and finds them without merit. They do not raise sufficient question to require discussion in this memorandum.

days and holidays. Plaintiff's fall occurred on February 23, 1955.

An expert witness, John Leonard, a chemist employed at the Bureau of Standards, testified on plaintiff's behalf concerning the chemical effect of using soap on a terrazzo floor.[3] He stated that a calcium stearate (a grease as insoluble as marble) would form as a result of the contact of the soap and the cement in the terrazzo. If Clorox were included in the solution with the soap, the formation of the grease would be accelerated and the condition aggravated. On the other hand, the use of detergents on the floor would be quite proper and would have no evil effects. He did not know how quickly the grease would form, but felt certain that after fifty washings with soap the slipperiness of the floor would be substantially increased.

Since the store was heavily trafficked, he was asked as to the possible effect of this amount of walking on the floor. He felt the effect was uncertain—the walking could either have an abrasive effect and remove the grease, or a polishing effect and increase the floor's slipperiness. About six months before this trial (about two and one-half years after plaintiff's fall) Leonard inspected the floor and saw no film upon it. However, it was brought out that the floor was then being cleaned with a different cleaner, Misto-Mint or Pepto-Mint, whose exact chemical properties were not disclosed.

Other testimony corroborated Leonard's opinion that the use of soap was improper. Romeo Di Giulian, President of the American Mosaic Company, Inc., called as a hostile witness by the plaintiff, stated that neutral cleaning agents, not soap, should be used. [Transcript, pp. 83–84]. John M. Walton, an architect, added that in Prince Georges County schools, which he had built with terrazzo floors, maintenance was conducted without the use of soap.

All of this evidence was uncontradicted by the defendant.

The Court has carefully reviewed the evidence and the case law on this issue and believes that the finding of negligence and proximate cause on the issue of improper use of soap was properly submitted to the jury.

Defendant has argued further that conceding this to be true, there is no evidence that it knew or should have known of the danger of the use of soap and water. In the light of Mr. Di Giulian's testimony cited above, and noting the fact that defendant operates many stores of similar construction in the metropolitan area where people are invited to enter, the Court is of the opinion that the jury could reasonably conclude that with the use of ordinary prudence defendant could have and should have become informed as to the proper maintenance of its floor.

## II.

That there was insufficient evidence to go to the jury on the issue of defendant's negligence in not properly drying the floor after mopping the same.

There was a dispute in the evidence as to whether defendant mopped the floor shortly before plaintiff fell. Defendant asserted the floor had been mopped before the store opened, but denied the floor was mopped shortly before plaintiff fell. Defendant conceded, however, that employees charged with the duty of keeping the floor clean were required to mop the floor whenever a situation was created which required it.

Plaintiff testified that she saw an employee mopping the floor not far from where she fell, and that the floor was damp where she fell.

In a motion such as this the testimony must be considered in the light

---

3. Defendant asserts that this witness was not qualified to state an opinion on this question. The Court is of the opinion that there was sufficient foundation laid for the admission of his testimony and it was for the jury to determine its probative value under the Court's instruction on expert testimony.

most favorable to plaintiff.[4] From this testimony the jury could reasonably infer that the floor had been mopped in the vicinity where plaintiff fell and had not been properly dried.

Defendant has cited five cases to the Court to sustain its contention that the evidence of negligence and causal relationship discussed under point I is too speculative. All of these cases deal with a situation where *no* evidence of negligence was introduced. Thus in Taylor v. Crane Rental Co.,[5] the only fact shown was that of the crane's falling, and in MacMaugh v. Baldwin,[6] that plaintiff fell down the stairs was proved, but no evidence which would tend to explain the accident was brought forward. Similarly, in Brown v. Capital Transit Co.,[7] all that came out at the trial was that plaintiff fell while alighting and lost her heel and that there were iron hobnails at the top of the stairs to prevent one from falling. The opinion of the Court of Appeals in Reece v. Capital Transit Co.,[8] is very short and the evidence, therefore, somewhat unclear, but again it appears that the cause of the accident was totally unexplained.

The recent case of Pomeroy v. Pennsylvania R. R. Co.[9] follows this same reasoning. In that case Mrs. Pomeroy left her seat in a moving passenger train and walked into the vestibule. She was found dead on the track with the vestibule doors open. The possibility of suicide was precluded. There was testimony that five minutes before the doors were closed and checked by a railroad employee. Varying grounds of negligence

were alleged: failure to inspect the doors properly, use of a defective lock, too infrequent inspection of the condition of the doors. The Court said: "This is not a case * * * where the evidence can be said to give some support to several conflicting possible inferences, a situation where the jury's function is apparent. The proof here sheds no light on either possibility. * * * The plaintiff has thus failed to present facts warranting one of the inferences necessary to establish the act of negligence relied on." [Pomeroy case, supra, 99 U.S.App. D.C. at page 280, 239 F.2d at page 443].

One should contrast with the above, the Supreme Court cases of Lavender v. Kurn[10] and Schulz v. Pennsylvania R. R. Co.,[11] interpreting Federal statutes where negligence is an issue. The Supreme Court emphasized the importance of jury trial in deciding the issue of negligence.

"Issues of negligence, therefore, call for the exercise of common sense and sound judgment under the circumstances of particular cases. 'We think these are questions for the jury to determine. We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others' ".[12]

In both of these cases the exact cause of the accident was unexplained but the plaintiff had introduced some evidence to sustain the inference that defendant's negligence had brought about the injury.

4. Brown, the man whose job it was to mop the floor, was not called as a witness. Although defendant's witnesses stated they saw no water on the floor, no one contradicted plaintiff's testimony that the floor was damp.

5. 1958, 103 U.S.App.D.C. —, 254 F.2d 350.

6. 1956, 99 U.S.App.D.C. 247, 239 F.2d 67.

7. 1942, 75 U.S.App.D.C. 337, 127 F.2d 329.

8. 1956, 97 U.S.App.D.C. 274, 230 F.2d 824.

9. 1957, 99 U.S.App.D.C. 272, 239 F.2d 435.

10. 1946, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.

11. 1956, 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668. These two Supreme Court cases were cited and discussed in the Pomeroy case, note 9 supra, as persuasive where common law negligence alone is at issue.

12. Ibid. 350 U.S. at page 525, 76 S.Ct. at page 610.

In Schulz v. Pennsylvania R. R. Co.,[13] Schulz had gone down to the docks to work the tugboats. Three of the boats were dark and one only partially illuminated by a spotlight from the pier. He was found in the water, drowned. Foul play or drunkenness or suicide was conceded to be too remote to be considered a reasonable possibility. Despite the fact that various alternatives were presented as to the cause of the accident (poor lighting conditions, ice on the boats, or plaintiff's own carelessness) the Court held the question to be one for the jury to decide.

Similarly, in Lavender v. Kurn [14] a switchman was struck on the back of the head by a hard dull object and was killed at the same time a passing train sped by. Plaintiff contended a mail hook attached to the moving train caused the death; defendant contended that the deceased had been murdered. Various mathematical computations were introduced to show that it was impossible for the mail hook to have swung so far as to strike the deceased. The Court, admitting the cause of death was unclear, said: "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion." [15]

On the second point, defendant has cited to the Court Stephens v. Sears Roebuck & Co.,[16] where the Court affirmed an n. o. v. judgment entered by the lower court. That case arose because of a slip by the plaintiff in the washroom of the department store. Plaintiff testified that she "seemed to hit a greasy or slick spot, my feet flew out from under me, and I hit the floor." Her friend also testified that the floor was slick and shiny from which she (the friend) concluded it was waxed. Defendant showed, however, that there were no grease spots on the floor and that the floor was cleaned every morning with a special cleaner not containing wax or oil.

No such rebuttal was presented here. Plaintiff's assertions of dampness remain uncontested in the case at bar, while her suggested inference from the fact of the mopper's presence in the area is also unchallenged. It is also worthy of consideration that her testimony is far more definite than "seemed slick and shiny".[17]

The case of Bellevue, Inc., v. Haslup [18] is somewhat closer to the situation here. There, at the time of the motion for directed verdict at the close of plaintiff's case, the only evidence presented was the testimony of the hotel physician that she noticed the floor was wet outside plaintiff's door. She declined to say that this wetness was due to waxing. The only connection between this wetness and the hotel was plaintiff's testimony that she saw two employees with a mop and bucket at the end of the hall just before she slipped. The District Court denied the motion for a directed verdict at that point. The Court of Appeals, following the receipt of all the evidence, affirmed.

Defendant's theory of the reason for the fall in the case at bar—insofar as it suggested an alternative theory to plaintiff's own—was that it was caused by a spontaneous fracture, the result of a brittleness of bone which normally occurs in elderly people. All doctors agreed, however, that some trauma was

---

13. Id.

14. Note 10 supra.

15. Ibid. 327 U.S. at page 653, 66 S.Ct. at page 744.

16. 7 Cir., 1954, 212 F.2d 260, 261.

17. Transcript pp. 34, 37, 38.

18. 1945, 80 U.S.App.D.C. 181, 150 F.2d 160.

necessary before such a fracture would occur. Normal walking could not cause such a fracture. Although relatively unlikely, it was possible that a sudden twist or turn could cause a spontaneous fracture. There was no evidence that plaintiff had, indeed, made such a twist or turn.

The Court has carefully reviewed the evidence in this case, has read that part of the transcript which has been transcribed and has had other parts read to it by the court reporter, and examined the applicable case law and finds that there was sufficient evidence to support the jury's finding on either or both grounds of negligence in maintaining the floor.

### III.

That the Court erred in receiving evidence that after plaintiff's fall defendant no longer used soap in cleaning the floor.

The Court is aware and fully accepts the general rule that repairs or changes after an accident are not admissible to show negligence.[19] However, this rule has exceptions where the evidence of later repairs or change is introduced for some other purpose. Thus Wigmore cites with approval the following language:

"The general rule, established by the overwhelming weight of authority, is that evidence of such subsequent changes is not admissible to show negligence nor as an admission of negligence. There are, however, certain clearly established exceptions to the general rule within which such evidence is competent. These exceptions may be classified as follows: (1) Where such evidence tends to show owership or control of the place where the injury occurs, where such ownership or control is controverted; (2) When the question in controversy is as to whose duty it was to make repairs; (3) to contradict a witness; (4) to show that the injury was brought about in the manner alleged; (5) to show existing conditions under certain circumstances at the time of the injury * * * * " [20]

The evidence of the change in cleaning agents was introduced at two points: the first time, during the cross-examination of John Smiley, the manager of the Giant Store at the time of the accident; and the second, on redirect of John Leonard, the chemical expert brought forward by the plaintiff.

Mr. Smiley's testimony on this point was as follows:

"Q. Have there been any changes in the construction or cleaning methods?

"A. A couple of changes.

*     *     *     *     *     *

"A. (We) still use soap and water * * * a different kind of soap. * * * Now use a liquid soap * * * a liquid paste.

He was asked the name of the new soap and he answered "Pepto-Mint Floor Cleaner", which he described as having a special odor and giving a nice fragrance.

He testified that its use began about six months ago and the floor looks a little cleaner now. The same color of the floor was still present, black and gray instead of the original pink and green of the marble chips. As far as he could determine the floor was just as slippery as before.

He did not see plaintiff's counsel with another person inspect the floor since the change had been made to Pepto-Mint.[21]

It appears to the Court quite clear that this testimony is admissible

19. 2 Wigmore on Evidence 154 Sec. 283 (3rd ed. 1940); Columbia & P. S. R. Co. v. Hawthorne, 1892, 144 U.S. 202, 12 S. Ct. 591, 36 L.Ed. 405; Altemus v. Talmadge, 1932, 61 App.D.C. 148, 58 F.2d 874 [dicta].

20. Shelton v. Southern R. Co., 1927, 193 N.C. 670, 139 S.E. 232, 234, cited in 2 Wigmore on Evidence 156 Sec. 283 (3rd ed. 1940).

21. The above is not transcribed, but is a summary of the testimony as read to the Court by the court reporter.

under the fourth and fifth exceptions cited above and quoted with approval by Wigmore. While there is no case directly on this point in this jurisdiction, the language of the Court in Avery v. S. Kann Sons Co.[22] appears to follow the Wigmore view.

We note further the relevance of this testimony on the issue of whether Giant knew or should have known of the danger involved in the use of soap.

The second time the change was mentioned at the trial it was done without objection. On cross-examination, Mr. Leonard was asked the following:

"Q. Have you seen the deposition of calcium stearate on a floor having undergone fifty washings? A. The only floor I have examined closely is the one that was raised in the hypothetical question here, and I could not see any evidence of a deposition on that particular floor.

"Q. And that was six months ago? A. Several months ago anyway.

"Q. Six months ago when you looked at it, you didn't see any? A. Did not see any deposition."

This obviously was intended to prove that the grease not only was absent at the time Leonard saw the floor but also was absent more than two years before when Mrs. Fine sustained her fall. This went to the heart of plaintiff's case.

■ On re-direct, therefore, plaintiff attempted to show why no grease was on the floor at the time of the inspection some two years later. He did so by showing that a new cleaner had been put into use whose exact chemical properties were unknown, from which the jury could draw the inference that the grease was on the floor, but had been dissolved by this new cleanser. All of this testimony was admissible under the general credibility exception to the rule of exclusion and our Court of Appeals has so stated.[23]

The Court, before ruling on this evidentiary question, has reread all of the transcript which has been printed and has had other portions read to it and does not feel that the evidence, even if inadmissible, in view of the fact that the change occurred later than two years after the accident, prejudiced the defendant.

The motion is in all respects denied. Counsel will present the appropriate order.

22. 1937, 67 App.D.C. 217, 91 F.2d 248.

23. Avery v. S. Kann & Sons Co., note 22 supra.