**TOMLINSON FLEET CORPORATION,
Defendant-Appellant,**

v.

**Harold A. HERBST, Plaintiff-Appellee.**

**No. 13644.**

United States Court of Appeals
Sixth Circuit.

July 27, 1959.

Shackelford Miller, Jr., Circuit Judge, dissented.

Russell V. Bleecker, Cleveland, Ohio, for appellant.

J. Harold Traverse, Cleveland, Ohio, for appellee.

Before MARTIN, Chief Judge, MILLER, Circuit Judge, and BOYD, District Judge.

MARTIN, Chief Judge.

This is an appeal by the Tomlinson Fleet Corporation from a judgment of $40,000, on the verdict of a jury, in favor of the individual appellee who was injured while serving as second-assistant engineer on the Steamer James Davidson, owned and operated by the appellant. Plaintiff-appellee had worked on the Tomlinson fleet during a number of years prior to the date of his injuries on July 23, 1956. For approximately a week prior to July 23, the lake-going steamer had been temporarily out of commission because of a strike in the steel industry. Without steam and with her power plant dead, she had been tied up at the dock in Superior, Wisconsin. Electricity for the ship was being furnished from a nearby plant on the shore.

When the strike was settled, the officers and crew engaged immediately in preparing the vessel for restored service. On the aforementioned date, after the banked fires in the ship's boilers had been shaken up, steam was available by nine o'clock, A. M., to disconnect the shore power and start the small dynamo in the engine room. Later in the morning, there was sufficient steam to disconnect

the small dynamo and put the main generator into operation in the engine room.

Sharp conflict inheres in the testimony of the plaintiff-appellee on the one hand and that of the chief engineer and the first-assistant engineer on the other. The appellee testified that, when he and the first-assistant engineer were in the main engine room, he was instructed by his superior officer: "As soon as I get the generator started, will you go down and start the auxiliary condenser." He swore further that the first-assistant engineer started the generator and, while it was running at full speed, called down to him to "start it up"—meaning for appellee to go down, start the condenser and then turn the steam from the auxiliary generator into the condenser. Herbst said that while this was taking place for some fifteen or twenty minutes, there was no electricity in the boat to light the bulbs above the stairway on which he fell. He testified, further, that, as he started down the stairway, he felt some slippery substance under his foot and slipped with such force that, although he had his hands on the railing, he "kept right on going" and "straddled" the hand railing where it curves and comes down to the side of the steps. He was not unconscious after he reached the bottom; but the pain he suffered as he tried to continue his duties quickly made him realize that he was severely injured.

The plaintiff-appellee stated that the place to which he was assigned for work was comparatively dark. He said that, as best he could remember, he slipped on the first step below the operating deck. Although the two witnesses introduced by the defendant-appellant contradicted the appellee, his testimony furnished substantial evidence that the stairway on which he fell was insufficiently lighted at the time of the accident. Likewise, his testimony furnished substantial evidence that there was a slippery substance on the stairway when he started down. He said that he "felt" the substance, although he did not see it. He stated, moreover, that there was an oiler on watch, on the morning of the accident, whose duties required him to go up and down the steps upon which plaintiff-appellee fell. A reasonable inference could be drawn by the jury that this oiler had spilled oil on the steps.

The cause of action was brought by the plaintiff on two separate grounds, namely: (1) negligence under the Jones Act, Title 46 U.S.C.A. § 688; and (2) unseaworthiness of the vessel under the general maritime law in relation to the stairway or ladder where the accident occurred.

Four interrogatories were submitted to the jury. The following were the questions asked and the answers given by the jury:

"I. Was the defendant negligent toward the plaintiff? Answer—Yes."

"II. If the answer to No. I is 'Yes,' in what manner was the defendant negligent? Answer—Defendant failed to thoroughly inspect ship before ordering men aboard."

"III. Did the plaintiff slip on a foreign, slippery substance on the ladder? Answer—Yes."

"IV. Was the ladder upon which the plaintiff slipped sufficiently lighted? Answer—No."

█ The jury's answers to the foregoing interrogatories, which as has been shown were supported by substantial evidence, constitute plain findings that the defendant was guilty of actionable negligence.

█ It is really not material to affirmance of the judgment that this court should determine further whether the plaintiff established that the vessel was unseaworthy, although, apparently, the verdict of the jury was placed upon both negligence and unseaworthiness. The argument of the defendant-appellant that if unseaworthiness should be a separate basis of recovery the plaintiff would have been required to plead it as a separate cause of action is rejected by McAllister v. Magnolia Petroleum Company, 357 U. S. 221, 224, 225, 78 S.Ct. 1201, 1204, 2 L.Ed.2d 1272: "But if the seaman is to sue for both unseaworthiness and Jones

644

Act negligence, he must do so in a single proceeding. That is a consequence of this Court's decision in Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069, which held that these claims were but alternative 'grounds' of recovery for a single cause of action."

We think the opinion of this court in Chesapeake & Ohio Ry. Co. v. Newman, 6 Cir., 243 F.2d 804 [brought under the Jones Act and tried by the same United States District Judge who tried the instant case], in which judgment for the plaintiff upon the verdict of a jury was affirmed, furnishes support for affirmance in the case at bar.

■ District Judge Connell instructed the jury clearly, correctly and adequately. He charged, *inter alia*: "To recover damages on the ground of defendant's negligence, the plaintiff must here show that he slipped on a foreign substance which made the ladder or stairway slippery and that said substance had been present for a sufficient length of time to charge the defendant with knowledge of its presence or that if the lighting and illumination of the ladder was inadequate, such inadequacy had existed a sufficient length of time for the defendant to have had an opportunity to correct that condition." This was a correct statement of law. It was unnecessary that the court should have embraced in its instructions, as requested by the defendant-appellant, the words "sufficient quantity" in relation to the foreign substance which made the ladder, or stairway, slippery. Quantity was not the test, but the correct issue was whether the substance on which plaintiff-appellee slipped was of such character that it actually caused his fall.

The trial court was not in error, in the circumstances of the case, in denying the motion of defendant for a directed verdict, or for judgment *non obstante veredicto,* or in the alternative for a new trial.

In Schulz v. Pennsylvania R. Co., 350 U.S. 523, 525, 76 S.Ct. 608, 610, 100 L. Ed. 668, the Supreme Court said: "In considering the scope of the issues entrusted to juries in cases like this, it must be borne in mind that negligence cannot be established by direct, precise evidence such as can be used to show that a piece of ground is or is not an acre. Surveyors can measure an acre. But measuring negligence is different. The definitions of negligence are not definitions at all, strictly speaking. Usually one discussing the subject will say that negligence consists of doing that which a person of reasonable prudence would not have done, or of failing to do that which a person of reasonable prudence would have done under like circumstances. Issues of negligence, therefore, call for the exercise of common sense and sound judgment under the circumstances of particular cases."

Johnson v. United States, 333 U.S. 46, 49, 68 S.Ct. 391, 92 L.Ed. 468, holds that the Jones Act, as amended, makes the standard of liability of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. applicable to suits by seamen for personal injuries suffered in the course of their employment, so that the shipowner becomes liable for injuries to a seaman resulting in whole or in part from the negligence of another employee. See also Palermo v. Luckenbach S. S. Co., 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3; The Law of Admiralty (Gilmore and Black, 1957), page 312.

The judgment of the district court is affirmed.

SHACKELFORD MILLER, JR., Circuit Judge (dissenting).

I am not in agreement with the ruling of the majority opinion which affirms the judgment on the basis of negligence on the part of the appellant.

The ruling of the majority opinion is based upon the fact that in answer to interrogatory No. I, the jury found that the appellant was negligent, and upon the Court's conclusion that there was sufficient evidence to take to the jury the issue of whether there was a slippery substance on the stairway when the appellee started down and whether the stairway on which the appellee fell was

insufficiently lighted at the time of the accident. The opinion thereupon concludes that the jury's answers to interrogatories No. III and No. IV, namely, that the appellee slipped upon a foreign, slippery substance on the ladder and that the ladder was not sufficiently lighted, must be accepted and support the finding of negligence.

I agree that the answers to interrogatories No. III and No. IV must be accepted on this review, but I do not agree that a ruling of actionable negligence can be based upon these findings.

I think the majority opinion is in error in construing these answers as a finding by the jury that the appellant was negligent *because* there was a foreign, slippery substance on the ladder or *because* the ladder was not sufficiently lighted. The jury did not find that negligence existed because of either of those reasons. On the contrary, it specifically found by its answer to interrogatory No. II that the appellant was negligent *because* it "failed to thoroughly inspect ship *before* ordering men aboard." (Emphasis is added.) In explaining this interrogatory to the jury, the District Judge told the jury, "There you will have to give whatever your answer would be, *whichever one of these four specifications of negligence* you thought had been proved, *whether it be one, whether it be all,* that would be the place in which you would answer if your answer to the first question is 'yes'." (Emphasis added.) The answer must necessarily be construed that the jury found negligence to exist for one reason, and that reason only, namely, failure to thoroughly inspect the ship before ordering the men aboard.

Liability based upon negligence cannot independently result from the jury's answers to interrogatory No. III that the appellee slipped upon a foreign, slippery substance on the ladder, or from its answer to interrogatory No. IV that the ladder was not sufficiently lighted.

The fact that the appellee slipped on a foreign, slippery substance on the ladder does not constitute actionable negligence. Other facts must also exist showing knowledge on the part of the appellant of the presence of the foreign substance, or reasonable opportunity to know about it. The jury was so instructed by the District Judge. The jury's answer to interrogatory No. II is a clear indication that it did not find these other facts to exist.

The fact that the ladder was not sufficiently lighted *at the time of the accident* does not by itself constitute actionable negligence. The vital question with respect to negligence as distinguished from unseaworthiness is *why* was it insufficiently lighted at that time. The evidence shows reasons why it was insufficiently lighted at the time of the accident. The isolated fact that it was not sufficiently lighted, without an additional finding that this condition was due to the fault of appellant, is not a finding of negligence.

I am accordingly of the opinion that the findings of fact by the jury in its answers to interrogatories No. III and No. IV are relevant only to the issue of unseaworthiness, which was also an issue submitted to them, and that a ruling of actionable negligence cannot be based upon them.

With respect to the jury's answer to interrogatory No. II that appellant was negligent because it failed to thoroughly inspect ship *before* ordering men aboard, I find no evidence in the record whatsoever to support this finding. The evidence did not deal with the inspection of the boat before ordering the men aboard. I do not read the majority opinion as attempting to sustain that finding. With that finding set aside, answer to interrogatory No. I has nothing to support it, is inconsistent with interrogatory No. II, and a verdict cannot be based upon it. Rule 49(b), Rules of Civil Procedure, 28 U.S.C.A.; Missouri Pacific R. Co. v. Salazar, 5 Cir., 254 F.2d 847. See also: Welch v. Bauer, 5 Cir., 186 F.2d 1002; Golden North Airways v. Tanana Publishing Co., 9 Cir., 218 F.2d 612, 618.

Since the judgment of the District Court will necessarily be affirmed on the majority opinion's holding of actionable negligence, it is unnecessary to discuss appellant's contentions with respect to the issue of unseaworthiness.