Enrique **VILLANEUVA**, Plaintiff,

v.

**CALIFORNIA TANKER COMPANY,**
**Defendant.**

**Civ. A. No. 120–57.**

United States District Court
D. New Jersey.

Oct. 13, 1960.

Baker, Garber & Chazen, by Milton Garber, Hoboken, N. J., for plaintiff.

Carpenter, Bennett & Morrissey, by Richard H. Hughes, Jersey City, for defendant.

WORTENDYKE, District Judge.

In this action under the Jones Act, 46 U.S.C.A. § 688, the plaintiff seaman sued the defendant employer-shipowner for damages for personal injuries alleged to have been suffered in consequence of negligence imputable to the defendant. Evidence was presented upon the trial from which the jury was entitled to infer that on August 11, 1955 plaintiff was a member of the crew of defendant's vessel, Kettle Creek. He was classified as a wiper, and subject to the orders of the vessel's first engineer. Plaintiff's usual working hours were from 8:00 a. m. to 5:00 p. m., but he was occasionally required to work overtime for appropriately increased compensation. The Kettle Creek was an oil tanker, and, upon the date above stated, was due to sail from Portsmouth, New Hampshire, after unloading oil at that port. Early in the morning of that day, prior to the usual hour for commencement of his work, plaintiff was awakened from his sleep and ordered by the first engineer to report on deck for the purpose of disconnecting the water hose by means of which the vessel's water tanks were being topped off, and to bring the hose aboard as soon as the removal of the gangway leading from the wharf to the deck was commenced. The water hose was in three sections and was composed of similar materials and was of similar dimensions to those which are customarily employed by municipal fire departments. It extended from a hydrant on the wharf to the tank coupling aboard the vessel. Upon reporting for duty in compliance with his superior's order, plaintiff expressed his opinion to him that the three coupled sections of hose were too heavy for the plaintiff to handle alone. Nevertheless he was directed by the officer to perform the task without assistance. There were at the time two other members of the crew classified as wipers who shared the same sleeping quarters with the plaintiff, but neither of these two wipers was directed by the first engineer to render any assistance to the plaintiff. When the plaintiff noticed that other members of the crew were preparing to remove the gangplank, he uncoupled the end of the hose from the hydrant, and proceeded to roll the three connected sections of the hose into a coil suitable for carrying. While he was carrying the three sections together, he heard the radio operator tell him to hurry-up, missed his step, and fell upon the gangway. Immediately following his fall he experienced the onset of severe pain in the lumbo-sacral portion of his back and in the abdominal area. Generalized pain later developed in other portions of his body. He reported his injuries to the first engineer the same morning, and was told to see the purser (who performed the duties of a medical officer aboard the vessel), from whom he received medication in the form of Alka-seltzer and linament. He was required to continue to perform his regular duties consisting of scraping, painting, etc., during the voyage. On September 1, 1955, while the plaintiff was performing his duties aboard the vessel, he was directed by his superior to assist another wiper in carrying a box or case from the deck to the engine room, and in setting the burden down, plaintiff became aware of a further onset of pain in his back, despite which he returned to his painting job, but while so occupied, his right arm became numb. He quit his work, took to his bed and remained there for a period of five days, during which time he was advised by the purser to again use linament for the alleviation of his pain. He left the vessel on September 6, with a medical certificate, and obtained treatment at two hospitals over an aggregate

period of two and a half months, being certified as fit for duty on November 15, 1955.

At the conclusion of the plaintiff's evidence defendant moved for dismissal, urging the absence of evidence of unseaworthiness on the part of the vessel and of causal negligence on the part of the defendant. The trial Court held that no evidence of unseaworthiness had been produced, but reserved decision upon the question of whether causal negligence was reasonably inferable from the evidence adduced. At the conclusion of the evidence for the defendant, a motion for a directed verdict was denied, and the case was submitted to the jury, which, after deliberation, was unable to agree, and was accordingly discharged.

In accordance with the provisions of F.R.Civ.P. Rule 50(b), 28 U.S.C.A., defendant renewed its motion for a directed verdict, and this opinion embodies the Court's decision upon that motion.

I am impelled to the conclusion that the plaintiff made out a case for the jury in deference to the views expressed by the Supreme Court of the United States in Schulz v. Pennsylvania R. Co., 1956, 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668; Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; and Ferguson v. Moore-McCormack Lines, Inc., 1957, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511.

In Schulz, supra, [350 U.S. 523, 76 S.Ct. 610] the Supreme Court predicated its conclusion that a jury might find causal negligence upon the fact that the defendant required the plaintiff "to work on these dark, icy and undermanned boats" and that the discovery of the seaman's "half-robed body with a flashlight gripped in his hand" floating in the water, justified an inference "that he slipped from an unlighted tug as he groped about in the darkness attempting to perform his duties."

■ The principle enunciated in each of these cases is expressed in Rogers, 352 U.S. at page 500, 77 S.Ct. at page 458, as follows:

"Under this statute [Federal Employers Liability Act] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury * * * for which damages are sought."

The standard of liability under the Jones Act is the same as that established by the Federal Employers Liability Act, 45 U.S.C.A. § 51 et seq. 46 U.S.C.A. § 688.

In Ferguson, supra, the plaintiff, classified as second-baker on defendant's vessel, while engaged in filling an order from a ship's waiter for portions of ice cream, used a sharp butcher knife to loosen the solidly frozen ice cream from its container, the usual hemispherical scoop furnished to him being inadequate for that purpose by reason of the solidity to which the substance was frozen. In using the knife, his hand slipped from the handle to the blade, resulting in the loss of two fingers from his right hand. The Supreme Court was of the opinion that "fair-minded men could conclude that [the shipowner] should have foreseen that [Ferguson] might be tempted to use a knife to perform his task with despatch, since no adequate implement was furnished him."

A paraphrase of the language in which the Supreme Court has expressed its recognition of the existence of jury questions in these cited cases seems equally applicable to the case at bar.

■ I conclude that the jury might properly have found that the first engineer, as defendant's representative, should have foreseen that the operation which he directed the plaintiff to perform might require such speed as to induce the plaintiff to attempt to carry all three sections of water hose at one time, and that the weight and bulk of that burden, in combination with the plaintiff's effort to hurry and his slightly built physique, might result in the tripping and falling which occurred. If there was a jury question upon the existence of causal negligence at the time of the fall during the bringing aboard of

the water hose, the subsequent occurrence of September 1, 1955, while the plaintiff was lifting another burden, would also constitute an appropriate subject for jury consideration upon the question of aggravation of the injuries inflicted in the prior occurrence.

The motion is accordingly denied and an appropriate order may be presented.