NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1097
_____

ALLIED ERECTING & DISMANTLING CO INC;
ALLIED CONSOLIDATED INDUSTRIES INC, Agent of for and on
behalf of Allied Erecting and Dismantling Co Inc

v.

UNITED STATES STEEL CORP,
                                                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-16-cv-01379)
District Judge: Honorable Patricia L. Dodge
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on February 7, 2024

Before: HARDIMAN, SCIRICA, and SMITH, *Circuit Judges.*

(Filed: May 22, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

This is a breach of contract action brought by plaintiffs/appellees Allied Erecting &

Dismantling Co., Inc. ("Allied") and its agent Allied Consolidated Industries, Inc. against

defendant/appellant United States Steel Corporation ("U.S. Steel"). Following a bench

trial, the District Court found U.S. Steel liable in relevant part and awarded Allied damages.

U.S. Steel now appeals a portion of that damages award. For the reasons below, we will

affirm.

I.

Because we write principally for the parties, who are familiar with the factual

context and legal history of this case, we will set forth only those facts necessary to our

analysis.

Allied was U.S. Steel's longtime industrial dismantling contractor. It has performed

over 600 dismantling projects for U.S. Steel since 1980. The parties' relationship and

Allied's dismantling work was governed by a series of agreements. Those agreements

granted Allied the right to perform all of U.S. Steel's dismantling work for a 10-year period

on a "last look" basis. App. 8. Specifically, if the parties were unable to negotiate the

terms for Allied to perform a specific dismantling project, U.S. Steel would "competitively

bid the work" and determine the "most acceptable bid." *Id.* at 9. The agreements required

U.S. Steel to then submit the "most acceptable bid" to Allied so that Allied could determine

whether to "match the terms of the most acceptable bid" and "agree to perform the work

on such terms." *Id.* at 10.

"Last look projects were fixed price, lump sum projects" in the sense that "Allied's

2

compensation was based on its agreement to match the price in the most acceptable bid." *Id.* at 23-24. Allied would also earn money by selling the scrap metal it generated from its dismantling work.

The parties' relationship has been "contentious," resulting in a series of lawsuits over the years. *Id.* at 7-8. Allied commenced the present action in September 2016, alleging five claims for breach of contract. The claims relevant to this appeal are: (1) failure to honor Allied's last look rights in connection with dismantling certain decommissioned railroad cars and barges, for which Allied sought lost profit damages (Count II); (2) wrongfully terminating Allied from its work on the Magnetic Separator Roll Removal Project at U.S. Steel's Minntac facility, for which Allied sought, among other things, "the value of scrap it removed while on the project as well as scrap removed by others after it was terminated" (Count III), *id.* at 47; and (3) prohibiting Allied from completing a dismantling project at U.S. Steel's Fairless Works site, for which Allied sought "the value of the scrap that was left at the Fairless site" (Count V), *id.* at 52.

Following a thirteen-day bench trial which concluded on November 20, 2020, as well as post-trial closing arguments on April 26, 2021, the District Court issued a 77-page memorandum opinion with findings of fact and conclusions of law, finding, in relevant part, for Allied.[1] The District Court awarded Allied a total of $3,758,705 in damages— subsequently increased to $5,708,077.67 with prejudgment interest. That damages award included $915,314 for Count II, $564,355 for the Minntac scrap metal claims in Count III,

---

[1] U.S. Steel did not contest liability with respect to Count II pursuant to a stipulation and verdict from prior litigation.

and $1,387,475 for Count V. The District Court calculated damages primarily based on evidence from Allied's damages expert who was "Allied's outside accountant for approximately fifty years." *Id.* at 11. The District Court found Allied's expert to be "more credible" than U.S. Steel's rebuttal expert, the cross-examination of whom "revealed inadequate investigation, a lack of understanding of the parties' contracts and documents and fundamental flaws in his analysis, all of which substantially undermined his credibility as a rebuttal expert witness." *Id.* at 23, 26.

This timely appeal followed.

## II.[2]

On appeal, U.S. Steel argues Allied's lost profits damages "were not sufficiently reduced by the costs Allied avoided." Appellant Br. 4. U.S. Steel urges us to apply de novo review.

"Review of the District Court's damages calculation is a mixed question of law and fact." *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 293 (3d Cir. 2014). While "[t]he determination of what legal standard to apply when calculating damages, and whether that standard was properly applied, are questions of law," "[t]he determination of facts upon which to apply this legal standard is a question of fact." *Id.* Here, U.S. Steel does not dispute "[t]he District Court recited the proper standard, including the requirement to reduce damages by the amount of actual costs avoided." *Id.* at 294. Rather, it challenges the District Court's calculation of avoidance costs—in essence, a factual determination.

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291.

We therefore review for clear error. *See also Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 187 n.26 (3d Cir. 2020) ("The Huber Parties challenge the District Court's factual determination that certain costs should be excluded from its lost profits damages award. We review that factual determination for clear error." (citation omitted)).

"A finding of fact is clearly erroneous when it is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Berg Chilling Sys., Inc. v. Hull Corp.*, 369 F.3d 745, 754 (3d Cir. 2004) (internal quotation marks omitted). Furthermore, "[t]o the extent that the District Court's conclusions rested on credibility determinations, our review is particularly deferential." *Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 156-57 (3d Cir. 2010).

Under this standard, we have no trouble concluding the District Court did not clearly err in its damages calculation. The District Court's 77-page memorandum opinion contained detailed and thorough factual findings on damages for each of Allied's claims. Under Pennsylvania law, damages for breach of contract need only be calculated to a "reasonable certainty." *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998). This standard embraces a "rough calculation." *Id.* It "does not require mathematical certainty." *VICI Racing*, 763 F.3d at 297 (quoting *Schulz v. Pa. R.R.*, 350 U.S. 523, 526 (1956)).

Moreover, the District Court made clear its damages calculations relied on testimony from Allied's damages expert, whom the District Court found to be "more credible" than U.S. Steel's rebuttal expert. App. 23; *see also, e.g.*, *id.* at 30 ("giv[ing]

5

substantially more weight to the opinions of [Allied's expert] as to the damages" for Count II), 71 (finding "reasonable" Allied's expert's calculation of lost profits with respect to Count III). "[W]hen a trial judge's finding is based on [her] decision to credit the testimony of one of two or more witnesses, . . . that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985).

Accordingly, we find no clear error in the District Court's damages determinations with respect to Counts II, III, and V.

III.

For the foregoing reasons, we will affirm.