KANSAS CITY, Respondent,

v.

Eugene O'CONNOR, Appellant.

KANSAS CITY, Respondent,

v.

Robert M. McNELLIS, Appellant.

KANSAS CITY, Respondent,

v.

Cleophus J. REED, Appellant.

Nos. 57266, 58132 and 58133.

Supreme Court of Missouri,
Court en Banc.

June 24, 1974.

Aaron A. Wilson, City Counselor, Dan G. Jackson, III, Associate City Counselor, Louis W. Benecke, City Prosecutor, David C. McConnell, Asst. City Prosecutor, Kansas City, for respondent.

William E. Shull, Robert G. Duncan, Duncan & Russell, Gladstone, for defendant-appellant.

Lewis E. Pierce, Pierce & Associates, Kansas City, for appellant.

PER CURIAM.

Consolidated appeals (taken prior to January 1, 1972) from judgments of conviction of violation of municipal ordinances asserting presence of questions involving construction of the Constitution of the United States and of Missouri.

In No. 57266 an information filed in the Municipal Court of Kansas City, Jackson County, Missouri, charged that Eugene O'Connor, on March 17, 1971, at 1517 Grand, Kansas City, Missouri (Eros Theater), did unlawfully and knowingly exhibit obscene material, to wit: two 16 mm. movies entitled "Bride's Delight" and "Stag 20," in violation of Revised Ordinances of Kansas City, 1966, as amended, Chapter 26, Section 26.142(c), Penalty Chapter 1, Section 1–17.

Defendant O'Connor was convicted in municipal court; he appealed and received trial *de novo* before Judge Lucas.

Sergeant Lawrence Weishar of the Kansas City Police Department went to the audience or viewing area of Eros Theater, 1517 Grand Avenue, Kansas City, Missouri, March 17, 1971, and viewed two motion pictures, "Stag 20" and "Bride's Delight." He then went to the lobby of the theater, arrested Mr. O'Connor for exhibiting obscene material, and seized two rolls of film.

Joseph Capra, investigator for the Commercial Recreation Division of Kansas City, also viewed the two films at Eros Theater and was present when Mr. O'Connor, as person in charge of the theater, was arrested by Officer Weishar.

Harry Hawblitzel, an investigator for the City Recreation Division, saw the films on March 16, 1971, told Mr. O'Connor what scenes he "considered to be obscene," and suggested to him that further showing would subject him to prosecution.

Pertinent sections of Chapter 26 of Kansas City's ordinances were received in evidence, and the court viewed the films.

The court found defendant O'Connor guilty of violating the ordinance and assessed his punishment at 120 days at the Municipal Farm.

In No. 58132 an information filed in the Municipal Court of Kansas City charged defendant Robert M. McNellis with viola-

tion of section 26.142(c) of the Revised Ordinances of Kansas City by éxhibition of an allegedly obscene film. He was convicted in municipal court; he appealed and received trial *de novo* before Judge Smith.

Harry Hawblitzel, investigator for the Commercial Recreation Division of Kansas City, went to Eros Book Store, 3325 Main Street, Kansas City, Missouri, March 15, 1971, and viewed a film he deemed to be obscene. He placed a quarter of a dollar coin in a slot of the container in which the film was kept and a motion picture appeared for approximately two minutes for view through a "peep" slot. The screen then went dark and insertion of another quarter was necessary to continue the film. Eight quarters were necessary to view the entire film. He and his companions, Detectives Richard Mason and Melvin Largent, viewed films for fifteen or twenty minutes after which they arrested defendant McNellis as manager of the premises and took possession of the films.

The ordinance was received in evidence and the court viewed the films.

The court found that the dominant theme of the movie in question appeals to prurient interest in sex, that it is patently offensive and affronts contemporary community standards relative description and representation of sexual matters, that it is utterly without redeeming social value, and that it is obscene. The court also found that the premises in question were open to adults over twenty-one years of age and that the films were viewed by a person on an individual basis by placing a quarter in the slot of one of eight machines.

The court found defendant McNellis guilty of violating the ordinance, assessed his punishment at 60 days in custody of the Municipal Corrections Institution, and placed him on probation for one year.

In No. 58133 an information filed in the municipal court charged defendant Cleophus J. Reed with violation of Section 26.-142(c) by exhibition of an allegedly obscene film. He was convicted in municipal court; he appealed and received trial *de novo* before Judge Smith.

Detective Charles D. White, on March 15, 1971, accompanied by Sergeant Joseph Chambers and Thomas Heavey, inspector from the Kansas City Recreation Department, went to a storeroom at 1517 Grand Avenue, Kansas City (Eros Theater), and viewed two films, "Tomato Head," and Selected Short Subjects. He thought the movies were obscene, arrested Mr. Reed as the person in charge of the premises, and confiscated the films. Sergeant Chambers corroborated Detective White, as did Harry Hawblitzel of the Recreation Department, who went to the theater and viewed the films March 12, 1971.

The ordinance was received in evidence and the court viewed the films.

The court made findings similar to those made in No. 58132, adjudged defendant Reed guilty of violating the ordinance, assessed his punishment at 60 days in custody of the Municipal Corrections Institution, and placed him on probation for one year.

Appellants variously contend the court erred: (I) in refusing to direct acquittal because the ordinance is unconstitutional in failing to provide a prior adversary hearing or administrative procedure for determination of obscenity; (II) in failing to suppress the film seized because the search and seizure without warrant and prior adversary hearing was unconstitutional; (III) in refusing to direct acquittal because the ordinance and evidence to support conviction violated their First Amendment right to free speech, press, and the privacy of consenting adults and appellants themselves; (IV) in refusing to direct acquittal because the ordinance does not employ adequate constitutional standards; (V) and (VI) in refusing to direct acquittal because the ordinance is unconstitutionally vague, and the showing would not support prosecution under constitutional standards.

In none of these cases is there any evidence that juveniles were permitted in the viewing areas, nor is there any claim that the ordinance in question reflected a specific and limited concern for juveniles. Neither is there any evidence of "pandering" to induce persons into the viewing areas, nor is there any suggestion of assault upon individual privacy as to make it impossible for unwilling persons to avoid exposure to the films.

In oral argument respondent represented that prosecutions under the ordinance in question are set for court hearing within twenty-four to forty-eight hours after arrest is effected for an early determination of obscenity *vel non* and that respondent did nothing to prohibit exhibition of second copies of films while the cases were pending. These representations stand undisputed; and there was no showing that the seizure prevented exhibition of the film by use of a second copy.

Pertinent sections of Chapter 26, Revised Ordinances of Kansas City, 1966, as amended, follow:

Sec. 26.141. Definitions.

(a) *Obscenity.* Material is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is a shameful or morbid interest, in nudity, sex or excretion, and if in addition it goes beyond customary limits of candor in describing or representing such matters. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be designed for children or another especially susceptible audience. Undeveloped photographs, molds, printing plates and the like, shall be deemed obscene notwithstanding that processing or other acts may be required to make the obscenity patent or to disseminate it. * * *

Sec. 26.142. Offenses.

No person shall knowingly:

* * * (c) Publish, exhibit or otherwise make available any obscene material; * * *

Sec. 26.143. Exceptions.

Nothing herein contained shall be deemed to prohibit dissemination of materials, otherwise in violation of this article, restricted to:

(a) Institutions or persons having scientific, educational, governmental or other similar justification for possessing obscene material; or

(b) Non-commercial dissemination to personal associates over the age of 18 years.

Appellants' position is that the posture and fundamental question of these appeals are the same and that they should receive the same treatment given defendant by the United States Supreme Court in State v. Hartstein, 469 S.W.2d 329 (Mo. banc 1971). The question was whether, by reason of the constitutional guarantee of freedom of expression, and the standards announced by the United States Supreme Court, prosecution under Section 563.280, RSMo 1969, V.A.M.S., for showing an allegedly obscene film was barred by the Constitutions of Missouri and the United States as they relate to freedom of speech and due process of law. The Supreme Court of Missouri affirmed defendant's conviction for showing the film, "Night of Lust"; however, on appeal, the Supreme Court of the United States, citing Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967), reversed the judgment of affirmance of the Missouri Supreme Court. Hartstein v. Missouri, 404 U.S. 988, 92 S.Ct. 531, 30 L.Ed.2d 539 (1971).

Whatever merit appellants' appeals may have possessed at the time of submission in this court May 21, 1973, has vanished in the wake of a series of subsequent decisions by the United States Supreme Court:

In Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), appellant was convicted of mailing unsolicited sexually explicit material in violation of a California statute that approximated the obscenity test of Memoirs v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 16 L. Ed.2d 1 (1966) (plurality opinion). The trial court instructed the jury to evaluate the materials by the contemporary community standards of California. Appellant's conviction was affirmed on appeal, and the Court held:

Obscene material is not protected by the First Amendment. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), reaffirmed. A work may be subject to state regulation where that work, taken as a whole, appeals to the prurient interest in sex; portrays in a patently offensive way, sexual conduct specifically defined by the applicable state law; and, taken as a whole, does not have serious literary, artistic, political, or scientific value. Basic guidelines for triers of the fact must be: (a) whether the average person applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest, Roth v. United States, supra, 354 U.S. 1. c. 489, 77 S.Ct. 1304; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. The test of "utterly without redeeming social value," Memoirs v. Massachusetts, supra, is rejected as a constitutional standard. The jury may measure the factual issues of prurient appeal and patent offensiveness by the standard that prevails in the forum community, and need not employ a "national standard." The majority also emphasizes, 413 U.S. 1. c. 26, 93 S.Ct., 1. c. 2616, that Mr. Justice Brennan, in dissent, does not "indicate where in the Constitution he finds the authority to distinguish between a willing 'adult' one month past the state law age of majority and a willing 'juvenile' one month younger"; and, 1. c. 27, 93 S.Ct., 1. c. 2617, that the Court does now "abandon the casual practice of Redrup v. New York, supra, and attempt to provide positive guidance to the federal and state courts alike."

In Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), respondent district attorney sued two "adult" movie theaters under Georgia civil law to enjoin exhibition of two allegedly obscene films. There was no prior restraint. Upon jury-waived trial, the Court, which did not require expert affirmative evidence of obscenity, viewed the films and dismissed the complaints on the ground that the display of films in commercial theaters to consenting adults, reasonable precautions having been taken to exclude minors, was constitutionally permissible. The Georgia Supreme Court reversed, holding that the films constituted hard core pornography outside the protection of the First Amendment. The Court held:

Obscene material is not speech entitled to First Amendment protection, Miller v. California, ante; United States v. Roth, supra. The Georgia civil procedure, assuming use of a constitutionally acceptable standard for determining obscenity *vel non*, comported with approved standards. It was not error not to require expert affirmative evidence of the films' obscenity, since the films, which were the best evidence of what they depicted, were in evidence. States have a legitimate interest in regulating commerce in obscene material and its exhibition in places of public accommodation, including "adult" theaters. The Court, 1. c. 57, 93 S.Ct., 1. c. 2635, stated it "categorically disapprove[d] the theory, apparently adopted by the trial judge, that obscene, pornographic films acquire constitutional immunity from state regulation simply because they are exhibited for consenting adults only"; and, 1. c. 66, 93 S. Ct., 1. c. 2640, "declined to equate the privacy of the home relied on in Stanley [v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.

Ed.2d 542 (1969)] with a 'zone' of 'privacy' that follows a distributor or a consumer of obscene materials wherever he goes."

In United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973), appellee was charged with knowingly transporting obscene material by common carrier in interstate commerce in violation of 18 U.S.C. § 1462. The District Court granted dismissal, holding the statute unconstitutionally overbroad for failing to distinguish between public and nonpublic transportation. Appellee relied upon Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). The Court held:

Congress has the power to prevent obscene material, not protected by the First Amendment, from entering the stream of commerce. The zone of privacy that Stanley v. Georgia, supra, protected does not extend beyond the home.

In United States v. 12 200-Ft. Reels Film, 413 U.S. 123, 1. c. 128, 93 S.Ct. 2665, 1. c. 2669, 37 L.Ed.2d 500 (1973), the Court, 1. c. 5, was "not disposed to extend the precise, carefully limited holding of Stanley [v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969)] to permit importation of admittedly obscene materials simply because they were imported for private use only. * * * the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell or give it to others."

In Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973), the proprietor of an "adult" bookstore, was convicted of violating a California obscenity statute by selling a plain-covered unillustrated book containing repetitively descriptive material of an explicitly sexual nature. Both sides offered testimony on the nature and character of the book, but there was no expert testimony that the book was "utterly without redeeming social importance." The trial court used a state community standard in applying and constru-

ing the statute and the appellate court affirmed. The Court held:

Obscene material in book form is not entitled to First Amendment protection merely because it has no pictorial content. A state may control commerce in such a book, even distribution to consenting adults. Appraisal of the nature of the book by the contemporary community standards of the State of California was an adequate basis for determination of obscenity. Expert testimony is not required when the alleged obscene material itself is in evidence.

In Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), petitioner was manager of a movie theater where a sexually explicit film was exhibited. After police officers saw a part of the film, the district attorney requested a criminal court judge to review it. Upon seeing the entire performance, the judge issued warrants for seizure of the film and for petitioner's arrest on the ground the film was obscene. There was no showing that the seizure prevented exhibition of the film by use of another copy, and the record did not indicate whether another copy was available. Trial was held 47 days after the arrest and film seizure, and petitioner was convicted. He argued that seizure of the film without prior adversary hearing violated the Fourteenth Amendment. He also argued that he was convicted under standards of obscenity both overbroad and unconstitutionally vague, and that films shown only to consenting adults in private are constitutionally protected. The New York Court of Appeals affirmed conviction holding that an adversary hearing prior to seizure of the film was not required and that an ex parte warrant, issued after a judicial determination of obscenity, was constitutionally sufficient. The Court held:

Where a film is seized for the bona fide purpose of preserving it as evidence in a criminal proceeding, and it is seized pursuant to a warrant issued after a determination of probable obscenity by a neutral magistrate, and following the seizure a

prompt judicial determination of the obscenity issue in an adversary proceeding is available, the seizure is constitutionally permissible. On a showing to the trial court that other copies are not available for exhibition, the court should permit the seized film to be copied so that exhibition can be continued pending judicial determination of the obscenity issue in an adversary proceeding. Otherwise, the film must be returned. With such safeguards, a pre-seizure adversary hearing is not mandated by the First Amendment.

In Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), a county sheriff viewed a sexually explicit film at a local drive-in theater, arrested petitioner for showing an obscene film in violation of Kentucky law, and seized, without warrant, one copy of the film as evidence. There was no prior judicial determination of obscenity. Although Roaden's conviction was reversed and the cause remanded, the Court nevertheless held:

The seizure without warrant was unreasonable under Fourth and Fourteenth Amendment standards not because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books or films, calls for a higher hurdle of reasonableness. The case did not present an exigent circumstance with respect to preservation of evidence, and where it may be reasonable to permit action without prior judicial approval.

Under these authorities and on this record, appellants' specific contentions must be denied.

■ With respect to Point I, the trial court did not err in refusing to acquit defendants because the previously quoted ordinance under which they were convicted parallels the ordinance quoted and approved by the Supreme Court in Roth v. United States, supra, specifically reaffirmed in Miller v. California. See Roth v. United States, supra, 354 U.S. 1. c. 513,

77 S.Ct. 1304; A.L.I. Model Penal Code Art. 207.10(2) (tentative draft No. 6, 1957).

■ Nor is there "an absolute First or Fourteenth Amendment right to a prior adversary hearing applicable to all cases where allegedly obscene material is seized. * * * seizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the *bona fide* purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film." Heller v. New York, supra, 413 U.S., 1. c. 488, 492, 93 S. Ct. 1. c. 2792. So far as this record shows, the pretrial procedure followed by respondent is consistent with that approved in Heller v. New York, supra.

■ With respect to Point II, the court did not err in refusing to suppress the films because their seizure was not a violation of any right guaranteed to defendants, nor was it a prior restraint for the reasons stated in connection with Point I. In Heller v. New York, supra, 1. c. 489, 93 S.Ct. 1. c. 2793, the Court noted that even in some of its prior cases it "did not require that the adversary proceeding must take place prior to *initial* seizure. Rather, it was held that a judicial determination must occur 'promptly so that administrative delay does not in itself become a form of censorship.'" Again, respondent's procedure in this case comports favorably with the Court's requirements.

■ With respect to Point III, the court did not err in refusing to acquit defendants because the court "categorically disapprove[d] the theory * * * that obscene, pornographic films acquire constitutional immunity from * * * regulation simply because they are exhibited for consenting adults only." Paris Adult Theatre I v. Slaton, supra, 413 U.S., 1. c. 57, 93 S. Ct., 1. c. 2635; Miller v. California, supra,

413 U.S., 1. c. 26, 93 S.Ct. 2607. Note also that the zone of privacy of Stanley v. Georgia, supra, cited by appellants, does not extend beyond the home. United States v. Orito, supra, 413 U.S., 1. c. 142, 93 S.Ct. 2674.

■ With respect to Point IV, the court did not err in refusing to acquit defendants because the ordinance does employ adequate constitutional language. Note again that respondent's ordinance parallels that approved in Roth v. United States, supra, reaffirmed in Miller v. California, supra. It is true, as argued by appellants, that the ordinance does not include as a test of obscenity, "utterly without redeeming social value," as formulated in Memoirs v. Massachusetts, supra. However, that test has now been rejected as a constitutional standard. Miller v. California, supra, 413 U.S., 1. c. 25, 93 S.Ct. 2607. Similarly, and contrary to appellants' argument, the trier of the fact may decide the issue of obscenity *vel non* by the standard that prevails in the forum community, and need not employ a national standard. Miller v. California, supra, 1. c. 30–34, 93 S.Ct. 2607.

With respect to Point V, the ordinance is not unconstitutionally vague and indefinite or improper for the reason, again, that it parallels that approved in Roth v. United States, supra.

■ With respect to Point VI, the court did not err in finding the allegedly obscene materials obscene. The court viewed the films which were the best evidence of what they depicted, Paris Adult Theater I v. Slaton, supra, and employed the standards of the ordinance, which standards are appropriate, Miller v. California, supra. Appellants do not persuade that the court's determination was erroneous. Hoffman v. Dickinson Operating Co., 468 S.W.2d 26 [1] (Mo.1971).

As demonstrated, these cases are controlled by the recent decisions of the United States Supreme Court, here summarized, and the judgments are affirmed.

PER CURIAM:

The Division One Per Curiam Opinion is adopted as the opinion of the Court en Banc.

MORGAN, HOLMAN, BARDGETT and HENLEY, JJ., concur.

DONNELLY, C. J., and FINCH, J., dissent on basis of Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757.

SEILER, J., dissents in separate dissenting opinion filed.

SEILER, Judge.

Defendants challenge the trial court's denial of their motion to suppress. In each of these cases police officers viewed the allegedly obscene films, made a personal determination that the films were obscene, arrested the defendants without warrant, and seized the films to be preserved as evidence, without a warrant or prior adversary hearing on the issue of obscenity.

The majority opinion would uphold these seizures under the authority of the recent Supreme Court decision in Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745, decided June 25, 1973. In the Heller case a judge attended a movie theater and viewed a film. At the end of the film the judge signed a search warrant for seizure of the film because in his opinion the film was obscene under the applicable New York statute. At the trial on an obscenity charge the defendant moved to dismiss the indictment on the grounds that the seizure of the film without prior adversary hearing on the issue of obscenity, violated the Fourteenth Amendment. The court concluded that there was no absolute right to a prior adversary hearing where allegedly obscene material is seized, *pursuant to a warrant,* to preserve the material as evidence. The court distinguishes sei-

zure of material for destruction, a form of prior restraint, and seizure for preservation as evidence. As to the latter, the court's opinion states, l. c. 492–493, 93 S.Ct. p. 2795, " . . . If such a seizure is *pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate,* and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding· is available at the request of any interested party, the seizure is constitutionally permissible. In addition, on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding . . . ."

The recent Supreme Court decision in Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), is dispositive of the seizure issue in this case. In Roaden a sheriff viewed a film at a local drive-in theater. At the end of the film he arrested the defendant on a charge of exhibiting an obscene film and seized the film, without warrant, for use as evidence. On appeal at the state level the seizure was upheld as incident to a lawful arrest. The United States Supreme Court reversed and struck down the seizure. The court's opinion says l. c. 504–505, 93 U.S. p. 2801. " . . . Seizing a film, then being exhibited to the general public, presents essentially the same restraint on expression as the seizure of all the books in a bookstore. Such precipitous action by a police officer, without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards. The seizure is unreasonable, not simply because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness. The setting of the bookstore or the commercial theater, each presumptively under the protection of the First Amendment, invokes such Fourth Amendment warrant requirements because we examine what is 'unreasonable' in the light of the values of freedom of expression . . .

" . . .

"Moreover, ordinary human experience should teach that the seizure of a movie film from a commercial theater with regularly scheduled performances, where a film is being played and replayed to paid audiences, presents a very different situation from that in which contraband is changing hands or where a robbery or assault is being perpetrated. In the latter settings, the probable cause for an arrest might justify the seizure of weapons, or other evidence or instruments of crime, without a warrant (citations omitted). Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation . . . "

Reading the Roaden and Heller cases together it appears that absent exigent circumstances which indicate that seizure of allegedly obscene material for preservation as evidence is a "now or never" situation, seizure is only permissible after some type of hearing on the issue of obscenity. The hearing can be a prior adversary hearing to determine obscenity. Or the hearing can be ex parte and take the form of showing and determination of probable cause by a neutral magistrate to support issuance of a search warrant for seizure of the material as obscene. Neither type of determination was made in the cases before us and the seizures were therefore invalid.

The majority opinion does not set forth Sec. 26.144 of the ordinance, an unusual provision which relates to "Adjudication of Obscenity". It reads as follows:

"Section 26.144. Adjudication of obscenity. In construing the meaning of

the terms or phrases used in this article which relate to Federal Constitutional Principles, only such meanings or inclusion shall be adopted as have been settled by controlling majority adopted opinions of the Supreme Court of the United States and not otherwise where such opinions exist; provided further, it is the intent of this article not to adopt any noncontrolling personal view or opinions of any justice or a number thereof less than the majority of the Supreme Court of the United States. Authorized as passed March 5, 1971."

What has been attempted here is enactment of a "Super Ordinance"—one which is self-amending and will never be unconstitutional because it incorporates by reference all majority opinions of the Supreme Court as they are decided. What is prohibited by the ordinance changes from day to day, depending upon the latest Supreme Court decision which, to use the words of the late Chief Justice Harlan F. Stone, makes it comparable to an excursion ticket, "good for this day and trip only."

This provision makes more vague the already ephemeral meaning of obscenity, because it allows prosecution of an individual for conduct pertaining to material which though "obscene" under the definition prevailing at the time of prosecution, was not obscene at the time of the alleged illegal conduct. The case at hand is a prime example of this. At the time the movies in the cases at bar were shown the law was as recognized in Hartstein v. Missouri, 404 U.S. 988, 92 S.Ct. 531, 30 L.Ed.2d 539 (1971) [which relied on Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967) to reverse a Missouri conviction for showing the film, "Night of Lust"], not the law announced by the Supreme Court on June 21, 1973, in Miller v. California which is here applied to make illegal acts occurring in 1971. There is thus no way for anyone to tell in advance what is legal under this ordinance and what is not. This violates basic due process standards.

There is another ground on which I dissent. The Missouri Constitution, Art. I, Sec. 8, provides "That no law shall be passed impairing the freedom of speech, no matter by what means communicated; that every person shall be free to say, write or publish, or otherwise communicate whatever he will on any subject, being responsible for all abuses of that liberty . . ." The spirit of this clause of our constitution is that all speech is protected until the freedom is abused—that is, unless the speech infringes on the rights of others. This idea is illustrated by the saying "Freedom ends where the other man's nose begins." The constitutional protection of freedom of speech is aptly expressed by the converse of this statement, "Freedom extends to where the other man's nose begins."

We defeat the spirit of this constitutional provision by deciding that the state may dictate the material and adult individual may purchase and the films he may see, though there is no showing that the individual's exercise of these freedoms does harm to or infringes on the rights of others.

Freedom of speech is not an absolute: all speech is not protected. It has long been recognized that this protection does not extend to libel and slander, fighting words, and obscenity. Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Why have these areas been singled out as an exception to constitutional protection? Because to protect these forms of speech for one individual necessarily limits the rights and freedoms of another. But where there is no limitation of another's freedoms, these forms of speech too, should be protected. Words which would otherwise be slanderous, for example, are protected if there is no publication or if no showing of damage can be made. Likewise fighting words are protected if they are spoken in private. Why then, should not otherwise obscene publications be protected if there is no showing of harm to others?

A state has a valid interest in proscribing obscene speech to protect minors, where there is evidence of pandering, or where the material is presented in such a manner that it intrudes upon the privacy of the unwilling listener or viewer. Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). But where, as here, there is no such evidence, the right of a consenting adult to see, read, and hear what he pleases should be protected.

I therefore respectfully dissent.