STATE of Missouri, Respondent,

v.

Carl William McMILIAN, Appellant.

No. 58106.

Supreme Court of Missouri,
Division No. 2.

March 10, 1975.

John C. Danforth, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for respondent.

Irl B. Baris, Newmark & Baris, St. Louis, for appellant.

STOCKARD, Commissioner.

Appellant was charged by information with a violation of § 563.280, RSMo 1969, V.A.M.S., in which it was alleged that he "did wilfully and unlawfully possess with intent to distribute a certain obscene, lewd, licentious, indecent or lascivious motion picture, to-wit: titled 'How Many Times'". He was found guilty by a jury

and sentenced to a fine of $1,000 and confinement in jail for a period of six months. Appellate jurisdiction is in this court because constitutional issues are presented concerning the use of the film as evidence after a seizure alleged to violate constitutional principles. We reverse and remand.

On January 9, 1970, four police officers in civilian clothing paid the admission price and entered the Olympic Drive-in Theater in St. Louis County. They observed two motion pictures, and then observed for 30 to 45 minutes the motion picture "How Many Times," the subject of this action. The officers then determined that the film was obscene, and placed appellant, manager of the theater, under arrest and seized the reels of film of "How Many Times."

After trial in the Magistrate Court, where appellant moved to suppress the film on the basis of an unconstitutional seizure, he was found guilty and a fine of $1,000 was imposed. An appeal was then taken to the circuit court of St. Louis County where appellant again, by pretrial motion, moved to suppress the film as evidence on the same basis asserted in the Magistrate Court. That motion was overruled and in the subsequently held trial the film was shown to the jury.

It is undisputed that the arrest took place without an arrest or search warrant. It is also admitted that there had been no prior judicial determination of probable cause of obscenity by an independent magistrate. The arresting officers made the arrest and the seizure after they had viewed a portion of the film, and after they arrived at their personal and independent determination that the film was obscene, and that a misdemeanor was being committed in their presence.

Appellant relies on several cases decided by the United States Supreme Court after this case was tried, the principal one of which is Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973). That case is remarkably similar on its facts and we shall set them forth briefly. There, the sheriff of Pulaski County, Kentucky, accompanied by the district prosecutor, purchased tickets at a drive-in theater and viewed a film called "Cindy and Donna" and concluded the film to be obscene. The sheriff then arrested the petitioner in that case and seized one copy of the film as evidence. Following the arrest the grand jury returned an indictment against petitioner for the exhibition of an obscene film in violation of Kentucky law. There had been no prior judicial determination of probable obscenity. In the Roaden case the court reviewed numerous previous rulings, and held that the seizure was unlawful. It said:

> The Fourth Amendment proscription against 'unreasonable . . . seizures,' applicable to the States through the Fourteenth Amendment, must not be read in a vacuum. A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material . . . [citing cases]. The question to be resolved is whether the seizure of the film without a warrant was unreasonable under Fourth Amendment standards and, if so, whether the film was therefore inadmissible at the trial. The seizure of instruments of a crime, such as a pistol or a knife, or 'contraband or stolen goods or objects dangerous in themselves' . . . are to be distinguished from quantities of books and movie films when a court appraises the reasonableness of the seizure under Fourth or Fourteenth Amendment standards.

The court then continued, referring to Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), that even when the seizure was made pursuant to a warrant, the warrant "could not be issued on the conclusory opinion of a police officer that the books [or, as in this case, a film] sought to be seized were obscene." It was held that the warrant in that case "lacked the safeguards demanded 'to assure

nonobscene material the constitutional protection to which it is entitled,' " because there had been " 'no step in the procedure before the seizure designed to focus searchingly on the question of obscenity.' "

Although in the Roaden case it was conceded that the film that had been seized was obscene, the court held the seizure of the film without a warrant to be unreasonable, and said:

Such precipitate action by a police officer, without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards. The seizure is unreasonable, not simply because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness. The setting of the bookstore or the commercial theater each presumptively under the protection of the First Amendment, invokes such Fourth Amendment warrant requirements because we examine what is 'unreasonable' in the light of the values of freedom of expression.

In conclusion, the court held:

The film seized in this case was being exhibited at a commercial theater showing regularly scheduled performances to the general public. The seizure proceeded solely on a police officer's conclusions that the film was obscene; there was no warrant. Nothing prior to seizure afforded a magistrate an opportunity to 'focus searchingly on the question of obscenity.' . . . If, as Marcus [Marcus v. Search Warrant, supra] and Lee Art Theater [Lee Art Theater v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968)] held, a warrant for seizing allegedly obscene material may not issue on the mere conclusionary allegations of an officer, a fortiori, the officer may not make such a seizure with no warrant at all.

Respondent admits that the fact situation in Roaden v. Kentucky, supra, is similar to that in this case, but asserts that this case must be controlled by Kansas City v. Connor, 510 S.W.2d 689 (Mo. banc 1974). In that case, relying on Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973) it was stated:

Nor is there 'an absolute First or Fourteenth Amendment right to a prior *adversary* hearing applicable to all cases where allegedly obscene material is seized. . . . seizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the *bona fide* purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film.'

In the Heller case a "neutral, detached magistrate" viewed the film in its entirety and "had a full opportunity for independent judicial determination of probable cause prior to issuing the warrant, and that he was able to 'focus searchingly on the question of obscenity.' " Following the issuance of the warrant there was an adversary hearing on the issue of obscenity. The substance of the Heller case may be stated as follows:

The necessity for a prior judicial determination of probable cause will protect against gross abuses, while the availability of a prompt judicial determination in an adversary proceeding following the seizure assures that difficult marginal cases will be fully considered in light of First Amendment guarantees, with only minimal interference with public circulation pending litigation.

Heller v. New York, supra, 431 U.S. at p. 493, 93 S.Ct. at p. 2795. Commenting on this, the Supreme Court, in the Roaden case, said:

Moreover, ordinary human experience should teach that the seizure of a movie

film from a commercial theater with regularly scheduled performances, where a film is being played and replayed to paid audiences, presents a very different situation from that in which the contraband is changing hands or where a robbery or assault is being perpetrated. In the latter settings, the probable cause for an arrest might justify the seizure of the weapons, or other evidence or instruments of crime, without a warrant. . . . Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation.

In a footnote it is then pointed out that the argument had been advanced that allegedly obscene films are particularly difficult evidence to preserve unless kept in custody, but in that footnote it was stated:

We again take judicial notice that films may be compact, may be easy to destroy or to remove to another jurisdiction, and may be subject to pretrial alteration by cutting out scenes and re-splicing reels. . . . But, as the Heller case demonstrates, where films are scheduled for exhibition in a commercial theater open to the public, procuring a warrant based on a prior judicial determination of probable cause of obscenity need not risk loss of the evidence.

We conclude that we are bound by Heller v. New York, supra, and Roaden v. Kentucky, supra, and that the film in this case, seized without a prior judicial determination of probable cause, was improperly admitted into evidence.

The judgment is reversed and the cause remanded.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court. All of the Judges concur.