**STATE of Missouri, Respondent,**

v.

**Donald E. REGGINS, Appellant.**

**No. 45235.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 23, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Jan. 14, 1983.

Application to Transfer Denied
Feb. 23, 1983.

Lawrence J. Fleming, Clayton, for appellant.

George Westfall, Pros. Atty., Clayton, for respondent.

CRANDALL, Presiding Judge.

Donald E. Reggins appeals from his conviction, after a jury-waived trial, of promotion of pornography in the second degree. § 573.030, RSMo (1978).[1] Appellant was sentenced to six months imprisonment; execution of the sentence was suspended and appellant was placed on probation for two years. We affirm.

Appellant first contends that evidence adduced did not show conduct proscribed by § 573.030 in that appellant was not in-

1. Statutory references are to RSMo (1978) un-    less otherwise indicated.

volved in the commercial distribution of pornography nor was it shown that any act of appellant was for pecuniary gain.

In testing the sufficiency of the evidence, facts and appropriate inferences intelligently drawn therefrom must be assessed in the light most favorable to the State and all adverse inferences and evidence disregarded. *State v. Turner,* 631 S.W.2d 695, 696 (Mo.App.1982).

The evidence, viewed by this standard, showed that on the evening of May 30, 1981, Detective Gary Hanrahan, dressed in plain clothes, was introduced to appellant at Perkins Pancake House. After some conversation appellant invited Detective Hanrahan to his apartment for a "party." When they arrived at the apartment appellant served the police officer a beer and then began to play a single video tape of two films, *The Devil and Miss Jones* and *Hot and Saucy Pizza Girls.*[2] During the viewing of the films, appellant offered to sell them to Detective Hanrahan for $90. Certain other activities and conversation transpired culminating in a homosexual advance by appellant on Detective Hanrahan. When this occurred Detective Hanrahan hastily left the apartment on the pretext of retrieving his keys. He immediately returned with his partner, Detective Garcia. The officers then arrested appellant and searched his apartment seizing the video tape of the two films and various other sexually explicit material.

■ Section 573.030 provides in pertinent part: "1. A person commits the crime of promoting pornography in the second degree if, knowing its content and character, he: (1) Promotes or possesses with the purpose to promote any pornographic material for pecuniary gain . . . ."

Section 573.010(4) defines "promote" as "manufacture, issue, sell, provide, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer to do the same." By offering to sell admittedly pornographic

films to Detective Hanrahan for $90 appellant clearly violated the letter of § 573.030. Appellant concedes this but argues that the legislature did not intend for § 573.030 to be applied to the facts of this case because it involved a private non-commercial offer to sell.

Appellant directs our attention to the Comment appended to § 573.030, specifically that portion which states that in the "area" of pecuniary gain the "emphasis" is on the commercial distribution of pornography. Appellant argues that this Comment is clear evidence of a legislative intent to limit the application of the statute to the public promotion of pornography. We disagree. Commercial distribution is simply the movement of property in exchange for other property (WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 456, 660 (1976)); the buying, selling, or exchange of articles. BLACK'S LAW DICTIONARY, 244 (5th ed. 1979). Here the appellant offered to exchange the films for money—a commercial transaction. While the Comment appended to § 573.030 may suggest the emphasis, there is no language indicative of any legislative intent to limit the application of that section to public promotion of pornography.

The statute as read is not incongruous nor unintelligible nor does its literal application result in an absurdity. *See State ex rel. May Department Stores Co. v. Weinstein,* 395 S.W.2d 525, 527 (Mo.App.1965). We therefore decline to insert or read into the statute words which would limit its application to public promotion only.

■ Appellant's argument that his actions were not for pecuniary gain is without merit. Appellant offered to sell the films to the police officer for $90. This clearly comes within the scope of the statute, even though a sale at that price may not have resulted in a personal gain or profit to the appellant. *See State v. Cox,* 619 S.W.2d 794, 796 (Mo.App.1981), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688

**2.** Appellant does not contest the pornographic    nature of the films on appeal.

(1982). Appellant's first contention is denied.

■ Appellant next contends that the video tape[3] should have been suppressed because its seizure violated the procedure for the seizure of obscene materials prescribed in *Roaden v. Kentucky,* 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973).[4] In *Roaden,* a sheriff purchased tickets to a drive-in theater where he observed a film he determined to be obscene. At the conclusion of the film the sheriff arrested the theater manager and seized the film as evidence. The court reversed the conviction in *Roaden* on the ground that the seizure of the film without a warrant, supported only by the officer's conclusion that the film was obscene, was unreasonable under fourth amendment standards, and was a prior restraint of materials arguably within the protection of the first amendment. *Roaden v. Kentucky,* 413 U.S. at 504, 93 S.Ct. at 2801.

*Roaden* is not applicable to the instant case. The seizure of one copy of the films exhibited by appellant "lacks the totality of restraint proscribed by *Roaden.*" *State v. Ward,* 512 S.W.2d 245, 246 (Mo.App.1974). Unlike *Roaden,* the seizure here resulted in no curtailment of the public's access to these films.[5] This was a private commercial transaction between two individuals. *Compare State v. McMillian,* 520 S.W.2d 26 (Mo.1975). "[S]eizure of films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the *bona fide* purpose of preserving it as evidence in a criminal proceeding . . . ." *Kansas City v. O'Connor,* 510 S.W.2d 689, 695 (Mo.banc 1974).

■ The video tape of the two films was in Detective Hanrahan's "plain view" while he was viewing the films and again when he returned to arrest the appellant and consequently there was no search involved in their discovery. *State v. Collett,* 542 S.W.2d 783, 786 (Mo.banc 1976). It is of no significance that the detective did not seize the tape upon first viewing it. *State v. Jines,* 539 S.W.2d 801, 804 (Mo.App.1976); *see also State v. Engberg,* 377 S.W.2d 282, 285 (Mo.1964). This is particularly true since the detective's absence from appellant's apartment was brief.

■ The seizure of the video tape was incident to appellant's arrest and therefore we find no error in its admission in evidence. *State v. · Ward,* 512 S.W.2d at 246.

The judgment is affirmed.

REINHARD and CRIST, JJ., concur.

---

3. Appellant also complains of the admission in evidence of other obscene items. Some of them were never admitted in evidence and the admission of the remaining item was, at most, harmless error because this was a jury-waived case. *See Pike v. Pike,* 609 S.W.2d 397, 403 (Mo.banc 1980); *Sides Constr. Co., Inc. v. Arcadia Valley R–11 School Dist.,* 565 S.W.2d 761, 765 (Mo.App.1978).

4. Appellant also argues that seizure of the video tape violates the mandate of § 542.281. That section provides that officers of the law *may* make application for the issuance of a search warrant to search for and seize obscene materials or raw materials used for the production of obscene materials. (Emphasis added.) The statute does not mandate a search warrant in all instances of a search and seizure of obscene materials but merely describes instances in which search warrants may be obtained and establishes procedures for obtaining them.

5. There was evidence in the record that the films on the video tape were available for sale or rent at retail establishments such as "Captain Video."